Peter A. Romero
promero@romerolawny.com

David D. Barnhorn
dbarnhorn@romerolawny.com

# LAW OFFICE OF
# PETER A. ROMERO

November 8, 2022

**VIA ECF**
Hon. Vera M. Scanlon
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Onoria Veras, et al. v. Village Care of New York, Inc.*
       Docket No.: 21-cv-05461 (KAM) (VMS)

Dear Judge Scanlon:

This firm represents Plaintiffs Onoria Veras, Tawana Lawton, Kadian Gordon-Mullet, Maribel Almonte, and Aleksandra Barsuk, and opt-in Plaintiffs Narciso Ozoria, Natalie Nieves, Bernice Creese, Abayomi Fagbeyiro, Alicia Gonzalez, and Lisa Bonet (collectively as "Plaintiffs") in the above-referenced matter against Defendant Village Care of New York, Inc. for alleged violations of the Fair Labor Standards Act and New York Labor Law. Specifically, Plaintiffs assert claims for unpaid overtime wages under the FLSA and NYLL, failure to furnish accurate wage statements for each pay period under NYLL § 195(3), and failure to provide a wage notice upon their hire under NYLL § 195(1). The parties have reached a resolution of this action. Accordingly, Plaintiffs now submit this motion for approval, pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreements with respect to Plaintiffs' FLSA claims.[1] The parties entered into individual settlement agreements with each Plaintiff. The terms of each agreement are the same, except for slight modifications to the agreement for Plaintiff Gonzalez who remains a current employee of Defendant. The parties' proposed settlement agreements (the "Agreements") are attached as Exhibit A.

## Procedural History

On October 1, 2021, Plaintiffs Onoria Veras, Tawana Lawton, Kadian Gordon-Mullet, Maribel Almonte, and Aleksandra Barsuk filed this action. D.E. 1. On October 1, 2021, opt-in Plaintiffs Narciso Ozoria, Natalie Nieves, Bernice Creese, Abayomi Fagbeyiro, Alicia Gonzalez, and Lisa Bonet filed their consent to join forms. D.E. 2-7. On January 11, 2022, Defendant filed its Answer to the Complaint. D.E. 17. The parties subsequently exchanged

---

[1] The parties do not seek the Court's approval with respect to the settlements of Plaintiffs' non-FLSA claims as there is no requirement for the Court to do so. However, although non-FLSA claims do not require the Court's approval, the parties' settlement agreements, attached as Exhibits A-K, include the resolution of all of Plaintiffs' claims asserted in this lawsuit.

LAW OFFICE OF PETER A. ROMERO PLLC    •    LABOR AND EMPLOYMENT LITIGATION

490 Wheeler Road, Suite 250, Hauppauge, New York 11788    •    (631) 257-5588    •    overtimelawny.com

relevant discovery relating to the Plaintiffs.  After exchanging relevant discovery, on June 21, 2022, the parties engaged in mediation before EDNY Mediator Chaim Book, a reputable mediator that has significant experience mediating wage and hour actions.  Although the parties were unable to reach a resolution at mediation, Mediator Book continued to guide the parties' settlement negotiations.  As a result of Mediator Book's assistance, the parties ultimately reached a settlement in principle following contentious, arms' length negotiations.  Thereafter, the parties negotiated the terms of their formal settlement agreements.

The settlement agreements between the Plaintiffs and the Defendant provides for payment of a gross sum of $100,000.00, inclusive of attorneys' fees and costs.  Pursuant to the Agreements, Plaintiffs will receive a total of $92,250.00, of which Onoria Veras will receive $4,984.98, Tawana Lawton will receive $4,589.67, Kadian Gordon-Mullet will receive $2,877.33, Maribel Almonte will receive $2,471.19, Aleksandra Barsuk will receive $7,654.63, Narciso Ozoria will receive $15,650.78, Natalie Nieves will receive $15,050.74, Bernice Creese will receive $7,316.74, Abayomi Fagbeyiro will receive $6,373.78, Alicia Gonzalez will receive $12,998,91, and Lisa Bonet will receive $12,281.25,[2] and Plaintiffs' counsel will receive a total sum of $7,750.00, consisting of $6,190.10 for attorneys' fees (i.e. approximately 6.29 percent of the net settlement amount after deducting costs from the gross settlement amount) and $1,559.90 for litigation costs.  This Firm's fees and litigation costs are allotted on a *pro rata* basis in accordance with each Plaintiff's settlement award, as reflected in each agreement.

## The Court Should Approve the Settlement Agreements as Fair and Reasonable

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207.  "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted).  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted).  Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  The Wolinsky factors require consideration of the following factors: (1) the Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreements are the product of arms'-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, Defendant is a not-for-profit health maintenance organization that contracts with state and local governments to provide managed healthcare to Medicare-eligible New Yorkers.  Plaintiffs assert that Defendant employed them as non-exempt

---

[2] Plaintiffs' settlement awards are calculated based on a pro rata basis with respect to their individual damages for all of their claims under the FLSA and NYLL.

Medicare Benefit Advisors.  Plaintiffs contend that their duties were primarily to locate potential applicants for Medicare plans and assist those individuals with submitting paperwork to apply for Medicare health insurance plans.  Throughout their employment, Plaintiffs allege that they commonly worked more than forty hours during many workweeks. As relevant to the FLSA, despite asserting that they worked more than forty hours per workweek, Plaintiffs contend that Defendant did not pay them their statutorily-mandated overtime rate of pay of one and one-half times their regular rate of pay for their hours worked in excess of forty hours per workweek.

Critically, the parties have numerous key disputes that impact liability and damages. As a threshold matter, and at the crux of the parties' dispute, Defendant contends that Plaintiffs were covered by the outside sales exemption of the FLSA.  Defendant asserts that Plaintiffs were salespeople whose primary duties were to sell its healthcare services and obtain contracts for its Medicare health insurance plans, which Defendant contends constitutes a sale for purposes of the FLSA's outside sales exemption.  Defendant contends that multiple courts that have found similar positions exempt from federal and state law overtime requirements on this basis.  Plaintiffs dispute Defendant's contention that the outside sales exemption applies to their employment.  Plaintiffs assert that they were not salespersons and that they merely located leads and assisted with filing potential clients' applications, in an attempt to assist the company with identifying potential clients to enroll into Defendant's Medicare health insurance plans.  Plaintiffs argue that individuals in Defendant's other departments and separate government entities determined their eligibility and made an offer of a contract to enroll a person for healthcare coverage and, as a result, others consummated the final Medicare contract.  Plaintiffs contend that their efforts to identify potential clients for Defendant does not constitute sales within the meaning of the exemption.  Because of this, the merits of whether the outside sales exemption applied to Plaintiffs is hotly-contested and constitutes the central dispute between the parties.  Critically, if Defendant were to prevail on its contention that the outside sales exemption applies, Plaintiffs would not be entitled to any overtime compensation.  Assuming that that the outside sales exemption does not apply to Plaintiffs, Defendant contends that Plaintiffs did not actually work overtime, and therefore were paid correctly for their hours worked and assert that Plaintiffs are not entitled to overtime wages.  The parties strenuously dispute the number of hours worked by Plaintiffs during each workweek.  While Plaintiffs contend that they each worked well in excess of forty hours during each workweek, Defendant asserts that Plaintiffs rarely, if ever, worked more than forty hours during their workweeks.  These disputes -- regarding both the applicability of the outside sales exemption and the number of hours worked by Plaintiffs – will turn primarily on the credibility of the parties and requires weighing complicated legal and factual issues by the trier of fact.  As such, the resolution of these disputes are difficult to predict and would have a significant outcome on liability and Plaintiffs' damages at trial, as these issues could result in Plaintiffs receiving an award that is significantly less than expected or even result in them receiving nothing at all.  Additionally, Defendant contends that Plaintiffs are not entitled to liquidated damages, whereas Plaintiffs assert that liquidated damages should be awarded because they argue that Defendant cannot establish that the alleged violations, if proven, were part of good faith efforts to comply with the FLSA.

Plaintiffs calculated their damages in order to assess their probable recovery in this litigation.  Making all reasonable assumptions in their favor, Plaintiffs allege that they are entitled to unpaid FLSA overtime compensation in the following amounts: $1,662.09 for

Onoria Veras, $4,752.75 for Tawana Lawton, $2,547.20 for Kadian Gordon-Mullet, $2,157.63 for Maribel Almonte, $8,209.71 for Aleksandra Barsuk, $17,309.53 for Narciso Ozoria, $16,546.16 for Natalie Nieves, $8,851.20 for Bernice Creese, $7,583.61 for Abayomi Fagbeyiro, $15,875.06 for Alicia Gonzalez, and $15,359.75 for Lisa Bonet. Plaintiffs claim that they are each entitled to FLSA liquidated damages in an amount equal to their alleged unpaid FLSA wages. In contrast, Defendant contends that Plaintiffs are not entitled to any damages.

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in full formal written and document discovery, and depositions of Plaintiffs, depositions of the Defendant, and likely several non-party witnesses. The parties' settlements also avoid potential motions for summary judgment and a time consuming and risky trial, which could result in a months' or years' long delay to obtaining a potential recovery for the Plaintiffs, even if they are successful, and avoids potentially facing future appeals. Notably, a trial in this lawsuit is particularly risky because it will likely turn substantially upon the credibility of the parties and the resolution of technical legal and factual disputes relating to the applicability of the outside sales exemption. In this litigation, Plaintiffs face an unusually high degree of risk if they continue to prosecute their claims to trial. Indeed, while Plaintiffs in many FLSA cases face the risk that they may establish liability but still obtain less money than they hoped for in damages, particularly where a jury determines that a plaintiff's typical hours worked are less than Plaintiffs believe, Plaintiffs here face the serious risk of a total loss. Indeed, Plaintiffs here face a much higher risk than an ordinary FLSA lawsuit. If they overcome the outside sales exemption, Plaintiffs contend that they are likely to prove that they worked overtime hours, although their amount of hours worked is contested and difficult to prove. If Defendant succeeds on establishing their affirmative defense that the outside sales exemption applies, Plaintiffs will not be entitled to any damages. As a result, all parties face a serious risk of losing at trial, in whole or in part. Even if Plaintiffs were successful on their FLSA overtime wage claims, but Defendant could prove that they made a good faith effort to comply with the FLSA, Plaintiffs would not be entitled to liquidated damages under the FLSA, reducing Plaintiffs' available FLSA damages by half. Moreover, if Defendant was able to prove that their violations were not willful under the FLSA, Plaintiffs' claims would be subject to a two year, rather than a three year, statute of limitations. Applying a two year statute of limitations would reduce the amount of Plaintiffs' unpaid FLSA overtime compensation to the following amounts: $0.00 for Onoria Veras, $68.68 for Tawana Lawton, $2,547.20 for Kadian Gordon-Mullet, $2,157.63 for Maribel Almonte, $2,731.57 for Aleksandra Barsuk, $11,497.22 for Narciso Ozoria, $10,823.83 for Natalie Nieves, $8,851.20 for Bernice Creese, $7,583.61 for Abayomi Fagbeyiro, $10,449.59 for Alicia Gonzalez, and $10,652.73 for Lisa Bonet. As such, by settling at this stage, Plaintiffs ensure that they will receive a fair and reasonable recovery in this matter, especially in light of the serious risks faced by Plaintiffs.

Accordingly, although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the significant possibility that they could receive lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Thus, assuming the parties' settlement agreements are approved, Plaintiffs will be able to recover their settlement funds more expeditiously, and with more certainty, than a trial judgment.

Furthermore, the settlement agreements do not contain any terms that would militate against the Court approving it.  In this matter, the parties' release in their Agreements contain a mutual release of claims to ensure finality of disputes between the parties.  Courts in this Circuit have repeatedly permitted a mutual general release in non-class wage and hour cases like the parties' settlement agreements, with experienced counsel, and where the Court can be assured that the rights of the plaintiffs are sufficiently protected. See Zai You Zhu v. Meo Japanese Grill & Sushi, Inc., 2021 U.S. Dist. LEXIS 193605, at *11-12 (E.D.N.Y. Oct. 6, 2021); Rosario v. Structural Preservation Systems, LLC, 2019 WL 1383642, at * 3 (S.D.N.Y. Mar. 27, 2019) ("general releases may be permitted where the plaintiffs are no longer employed by defendants, the releases were negotiated by competent counsel for both sides and the releases are mutual"); Khan v. Young Adult Institute, Inc., 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) ("Broad general releases of non-FLSA claims are acceptable where the release of claims is binding on both plaintiffs and defendants because the mutuality cures the "concern[ ] that the waiver unfairly benefits only Defendants.") (quoting Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, 2016 WL 922223 at *2 (S.D.N.Y. Feb. 3, 2016); Snead v. Interim HealthCare of Rochester, Inc., 286 F.Supp.3d 546, 556 (W.D.N.Y. 2018) ("In the instant matter, Plaintiff is no longer an employee of Defendant, and the release at issue is mutual...Furthermore, because this case is not a class action, at least one of the dangers posed by an overbroad release — that it would bind class members who had no bargaining power concerning the settlement terms — is not present here...Therefore, under the circumstances of this case, the Court finds that the mutual waiver and release provisions are a fair and reasonable outcome of balanced negotiations, occurring over several months, which will bring closure to both sides.); Burgos v. Northeast Logistics, Inc., 2018 WL 2376481, at * (E.D.N.Y. Apr. 26, 2018) (holding that approval of a mutual general release in the non-class-action context is permissible, where the plaintiff is no longer employed by the defendant, and where the release includes "reciprocity of parties" (i.e., where the array of persons covered by the waiver was symmetrical)); Weidong Li v. Ichiban Mei Rong Li Inc., 2017 WL 1750374, (N.D.N.Y. May 5, 2017) (concluding mutual general release, where employment relationship was already terminated, reflected the parties' "obvious desire [] to end their relationship without the specter of further disputes. Such an intention is entirely consistent with the goal under the FLSA of achieving a fair and just resolution."); Souza v. 65 St. Marks Bistro, No. 15-CV-327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) ("A general release of the kind proposed in this case, with former employees who have no ongoing relationship with the employer, makes sense in order to bring complete closure" and noting a mutual general release, like the one negotiated between Plaintiffs and Defendant, "will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes."); Chauca v. Abitino's Pizza 49th Street Corp., 2016 WL 2647603, at *1-2 (S.D.N.Y. June 29, 2016) (approving mutual general release in FLSA settlement); Weng v. T&W Restaurant, Inc., 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (approving mutual general release in FLSA settlement, but denying approval of agreement for other reasons); Cionca v. Interactive Realty, LLC, 2016 WL 3440554, at *3-4 (S.D.N.Y. June 10, 2016) (same); Lopez v. Poko-St. Ann L.P., 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (citing Souza v. 65 St. Marks Bistro, 2015 WL 727174 7, at *5 (S.D.N. Y. Nov. 6, 2015); and Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016)) (denying settlement due to, inter alia, the general release being overly broad and not mutual, but holding that the release would be approved if revised to be mutual)); Lola, 2016 WL 922223, at *2 (quoting Souza, 2015 WL 7271747, at *5) (approving settlement agreement with mutual releases and noting "mutual release of claims is acceptable

because it 'will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes.'"). Here, all of the Plaintiffs, except Gonzalez, are no longer employed by Defendant. With respect to Plaintiff Gonzalez, her number of hours have been reduced so that she no longer works in excess of forty hours per week and, her role and responsibilities now fall within the outside sales exemption, and as a result, there are no continuing violations. As a result, the parties' mutual general release will permit all parties to end all disputes between them and move forward from a clean slate.

Additionally, the agreements do not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood, 2015 WL 4111668, at *1 (citing Lopez, 96 F. Supp. 3d at 177-181); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions…in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181). Similarly, the agreements do not contain any non-disparagement provisions.

Moreover, the reasonableness of these settlements are also assured by the involvement of a mediator. Indeed, the presence of a mediator "provides assurance that the settlement was not the product of collusion." Bilbao v. LCS Enters. Inc., 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); see also Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 618-619 (S.D.N.Y. 2012) (citing In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). Here, the parties engaged in contentious negotiations over hotly-contested issues that required the assistance of an experienced mediator, as well as receiving assistance from the mediator for several weeks after the parties' mediation to guide the parties to a resolution, and this matter likely would not have reached a settlement without that mediator's assistance. Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

## The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable

In addition to assessing the reasonableness of the settlement award, most courts since Cheeks have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336). In this case, the portion of the settlement amount attributable to attorneys' fees is $6,190.10, or approximately 6.29 percent of the net settlement amount after deducting for litigation costs.

Notably, while Courts may now award attorneys' fees in amounts greater than one-third of the total settlement sum, plus costs, Fisher v. SD Prot. Inc., 948 F.3d 593 (2d Cir. 2020), Courts have traditionally held that approval of attorneys' fees of 1/3 of the settlement sum, plus costs, is reasonable and routinely approve such terms in settlement agreements. Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Euceda v. The Hidden Wharf, Inc., Docket No. 19-cv-06564 (CLP), D.E. 38, at *10 (E.D.N.Y. Feb. 28, 2022) ("the requested fees are approximately one-third of the settlement amount, a percentage typically found reasonable in this Circuit"); Oxley v. Excellent Home Care Servs., LLC, 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), report and recommendation adopted, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) (citing Romero v. Westbury Jeep Chrysler Dodge, Inc., 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016)) (noting "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable" in FLSA settlements and awarding plaintiff's counsel a fee of 1/3 of the net settlement after costs, plus an award of costs); Yong Yuan Wang v. Mandarin Glen Cove, Inc., 2019 WL 5695910, at *2-3 (E.D.N.Y. Sept. 30, 2019) (citing Romero, 2016 WL 1369389, at *2) (same); Meza v. 317 Amsterdam Corp., 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs). Courts have held that a one-third recovery is appropriate in a case where, as here, Plaintiffs' counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Thus, Plaintiffs' counsel's requested fees of approximately 6.29 percent of the net settlement sum – far less than the standard contingency fee of one-third of the net settlement sum – after deducting for litigation costs is certainly reasonable.

Additionally, the reasonableness of the fee for which approval is requested here is further solidified by "[a]pplying the lodestar method as a cross check." Guaman v. Ajna-Bar NYC, 2013 WL 445896, at *1 (S.D.N.Y. Feb. 5, 2013) (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the Firm multiplied the attorney hours spent on the case by each individual's reasonable hourly rate. See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007).

Here, the Law Office of Peter A. Romero PLLC is a boutique employment litigation law firm, located at 490 Wheeler Road, Suite 250, Hauppauge, New York 11788, with a substantial practice primarily representing plaintiffs in wage and hour matters, including individual, collective action and class action matters, and employment discrimination matters

in both state and federal court.

        With respect to Peter A. Romero, Esq.'s experience, Mr. Romero graduated from St. John's University School of Law in 2003. He was admitted to practice in New York in November 2003, the United States District Court for the Southern District of New York in August 2004, and the United States District Court for the Eastern District of New York in October 2004. Mr. Romero previously worked for a prominent employment law litigation firm as an associate from July 2004 until January 2009 and as a partner from January 2009 until June 2015. Thereafter, beginning in June 2015 through the present, Mr. Romero has operated his own employment law litigation firm, the Law Office of Peter A. Romero PLLC, as its principle. That firm employs one senior associate, the undersigned, David D. Barnhorn, Esq., another associate, Matthew Farnworth, Esq., a paralegal, and an administrative assistant, as well as other support staff as needed. Throughout his legal career, beginning in July 2004 through the present, Mr. Romero has focused his practice almost entirely on employment law litigation, where a majority of his cases have been comprised of individual, collective action and class action wage and hour lawsuits in federal and New York courts. Indeed, Mr. Romero has been appointed as Class Counsel in numerous class action cases in federal and New York courts. Moreover, throughout his career, Mr. Romero has conducted numerous trials and arbitrations on behalf of his clients in employment law disputes, including wage and hour matters. Finally, while employed as a partner at another employment law litigation firm from January 2009 until June 2015, Mr. Romero was responsible not only for his own case load of employment law litigation matters, but also for supervising and revising and approving the work of four associates who each had their own case load of employment law litigation matters, including wage and hour matters. Mr. Romero is also an active member of the National Employment Lawyers Association, an entity that focuses on employee rights in the workplace and whose membership consists of lawyers that primarily, or exclusively, represent employees. Mr. Romero has also been recognized by <u>Best Lawyers in America</u> in the practice area of employment law each year since 2013 and as a Super Lawyer in "Employment Litigation" for the years 2019, 2020, 2021 and 2022.

        The undersigned, David D. Barnhorn, Esq., graduated *cum laude* from Hofstra University Maurice A. Deane School of Law in 2012. I was admitted to practice in New Jersey and the United States District Court for the District of New Jersey in November 2012, in New York State in 2013, and the United States District Courts for the Eastern and Southern Districts of New York in 2014. I have been employed as a senior associate for this firm since April 2018. Prior to joining this firm, I worked as an associate at two prominent employment law litigation firms from November 2012 until April 2018. Throughout my legal career, beginning in November 2012 through the present, I have focused my practice almost entirely on employment law litigation, where a majority of my cases have been comprised of individual, collective action and class action wage and hour lawsuits in New York and New Jersey state and federal courts. Additionally, the undersigned has been appointed as Class Counsel in multiple class action cases. Throughout my time as an associate, I have been responsible for actively handling cases in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal courts from their inception through trial and resolution. Moreover, during my career, I have conducted numerous trials and arbitrations on behalf of my clients in employment law disputes, including wage and hour matters. Finally, I have been recognized as a Rising Star by Super Lawyers as an "Employment & Labor Attorney" for the years 2016, 2017, 2018, 2019, 2020, 2021, and 2022.

Matthew J. Farnworth, Esq., graduated from Pace University School of Law in 2016. Mr. Farnworth was admitted to practice in New York State, as well as the United States District Courts for the Eastern and Southern Districts of New York in 2018, in New Jersey State Court in 2019, and the United States District Court for the District of New Jersey in 2020. Mr. Farnworth has been employed as an associate for this Firm since August 2021. Prior to joining this firm, Mr. Farnworth worked as a senior associate and associate at two prominent employment law litigation firms from May 2018 until August 2021. Throughout his legal career, beginning in May 2018 through the present, Mr. Farnworth has focused his practice almost exclusively on employment law litigation, where a majority of his cases have been comprised of individual, collective action and class action wage and hour lawsuits in New York and New Jersey state and federal courts. Throughout his time as an associate, Mr. Farnworth has been responsible for actively handling cases in pre-litigation stages, arbitration, administrative agencies, as well as handling litigation in both state and federal courts.

Here, if Plaintiffs' counsel were seeking fees pursuant to the lodestar, Plaintiffs would seek hourly rates of $400.00 per hour for Peter A. Romero, Esq., $275.00 per hour for the undersigned, David D. Barnhorn, Esq., $250.00 per hour for Mr. Farnworth, and $100.00 per hour for the firm's paralegal, Angelica Villalba.[3]  "A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" Spain v. Kinder Stuff 2010 LLC, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008)). "The reasonable hourly rates should be based on rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Id. (quoting Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks omitted)). Here, based on the customary rates charged in this district and the experience of the attorneys responsible for this matter, hourly rates of $400.00 per hour for Mr. Romero, $275.00 per hour for the undersigned, $250.00 per hour for Mr. Farnworth, and $100.00 per hour for the firm's paralegal, Ms. Villalba, are reasonable. Euceda v. The Hidden Wharf, Inc., Docket No. 19-cv-06564 (CLP), D.E. 38, at *8-10 (E.D.N.Y. Feb. 28, 2022) (approving attorneys' fees as reasonable for FLSA collective action settlement based on $400 per hour for Mr. Romero, $275 per hour for Mr. Barnhorn, and $100 per hour for the firm's paralegal Ms. Villalba, as well approving a multiplier of 1.93); Rivera v. Harvest Bakery, Docket No. 13-cv-00691, D.E. 159 (E.D.N.Y. October 1, 2021) (See D.E. 158) (approving attorneys' fees as reasonable for FLSA collective action and NYLL class action settlement based on $400 per hour for Mr. Romero, $275 per hour for Mr. Barnhorn, and $100 per hour for the firm's paralegal Ms. Villalba, as well approving a multiplier of 1.5); Alcantara v. Alon B. Inc., 2021 WL 4463539, at *1 (E.D.N.Y. Sept. 29, 2021) (approving "rates of $400.00 per hour for attorney Peter Romero, Esq., $275.00 per hour for senior associate David D. Barnhorn, Esq., and $100 per hour for paralegal Angelica Villalba" as reasonable "and within the range of similarly experienced attorneys who practice wage and hour cases in the Eastern District of New York."); Aguilar v. The Fence Guy, Inc.,

---

[3] While this firm primarily represents clients on a contingency fee basis, we do represent some clients on an hourly basis. In those retainers, depending on each client's respective financial abilities, clients have agreed to compensate Mr. Barnhorn for representation at rates of $300.00 to $500.00 per hour, have agreed to compensate Mr. Farnworth at a rate of $300.00 per hour, and have agreed to compensate Mr. Romero for representation at rates of $300.00 to $500.00 per hour. Accordingly, the firm's requested rates are well within the normal rates awarded in contingency fee matters and the rates actually received by paying clients.

2019 WL 8160723, at *2 (E.D.N.Y. Dec. 2, 2019), report and recommendation adopted, 2020 WL 1066345 (E.D.N.Y. Mar. 5, 2020) (awarding the undersigned, Mr. Barnhorn, fees based on an hourly rate of $275.00); Solnin v. Sun Life & Health Ins. Co., 2018 WL 4853046, at *3 (E.D.N.Y. Sept. 28, 2018) (awarding mid-level associate with 5 years of experience a rate of $275.00 and noting proper rate for senior associates is up to $325.00 per hour and for experienced partners is between $300.00-$450.00 per hour in this district); Hui Lan Weng v. Fancy Lee Sushi Bar & Grill, Inc., 2017 WL 5564892, at *2 (E.D.N.Y. Nov. 3, 2017), report and recommendation adopted, 2017 WL 5564593 (E.D.N.Y. Nov. 18, 2017) (citing Houston v. Cotter, 234 F. Supp. 3d 392, 402 (E.D.N.Y. 2017)) (awarding rates of $270.00 to $350.00 to senior associates and noting that "[i]n recent years, courts have approved the following hourly rates for attorneys practicing in the Eastern District of New York: $200 to $450 for partners in law firms, $200 to $325 for senior associates, [and] $100 to $200 for junior associates…"); Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC, 2014 WL 4954629, at *9 (E.D.N.Y. Oct. 2, 2014) (citing Man Wei Shiu v. New Peking Taste, Inc., 2013 WL 2351370, at *13 (E.D.N.Y. May 28, 2013)) ("Recent decisions in the Eastern District of New York have determined that reasonable hourly rates in FLSA cases are approximately $300-$450 for partners, $200-$325 for senior associates, [and] $100-$200 for junior associates…"); Small v. New York City Transit Auth., 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014) (citing Struthers v. City of New York, 2013 WL 5407221, at *7 (E.D.N.Y. 2013)) (recognizing rates of $300.00-$450.00 per hour for partners, $200.00-$300.00 per hour for senior associates, and $100.00-$200.00 per hour for junior associates); Hilton v. Int'l Perfume Palace, Inc., 2013 WL 5676582, at *11 (E.D.N.Y. Oct. 17, 2013) (district court adopting report and recommendation that held "that partners and counsel be compensated at the rate of $450.00 per hour, mid-level associates be compensated at the rate of $325.00 per hour, [and] junior associates be compensated at the rate of $200.00 per hour…"); Ferrara v. Prof'l Pavers Corp., 2013 WL 1210522, at *8 (E.D.N.Y. Feb. 15, 2013), report and recommendation adopted, 2013 WL 1212816 (E.D.N.Y. Mar. 23, 2013) (finding hourly rates of $400.00 for partners, $300.00 for senior associates, and $200.00 for junior associates); Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, et al. v. CEI Contractors Inc., 2022 WL 3225680, at * 5 (S.D.N.Y. August 10, 2022) (awarding an associate who graduated from law school the same year as Mr. Farnworth, practicing within the associate's same legal field fees of $250.00 per hour); Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, et al. v. Land Cruising Properties, Inc., 2022 WL 1125623 at *7 (S.D.N.Y. April 15, 2022) (same); Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Innovation Designs Inc., 2021 WL 4869951, at *7 (S.D.N.Y. Oct. 18, 2021) (same); see also Baizan Guerrero v. 79th St. Gourmet & Deli Inc., 2019 WL 4889591, at *12 (E.D.N.Y. Sept. 10, 2019), report and recommendation adopted, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019) (awarding hourly rate for paralegal at $100.00 in FLSA action); Quito v. El Pedragal Rest., Corp., 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Lopez v. PMMT Inc., 2016 WL 7633264, at *16 (E.D.N.Y. Aug. 25, 2016), report and recommendation adopted, 2017 WL 27943 (E.D.N.Y. Jan. 3, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Gesauldi v. Dan Yant Inc., 6 F. Supp. 3d 264, 274 (E.D.N.Y. 2014) (collecting cases) (awarding hourly rate for paralegal at $100.00 and noting "[v]arious courts in this district have approved this rate for paralegal services."); Apolinar v. Glob. Deli & Grocery, Inc., 2013 WL 5408122, at *16 (E.D.N.Y. Sept. 25, 2013) (awarding hourly rate for paralegal at $100.00 in FLSA action).

Here, Plaintiffs' counsel investigated the Plaintiffs' claims, conducted a detailed inquiry regarding Plaintiffs' job duties, their hours worked and compensation received, and Defendant's compensation policies, engaged in relevant discovery for Plaintiffs, created an assessment of Plaintiffs' damages, attended mediation, and subsequently negotiated their settlement agreements.  Due to the contingent nature of the case, Plaintiffs' counsel undertook these efforts with no ultimate guarantee of compensation and facing substantial risk given that Plaintiffs faced a serious challenge to overcome the outside sales exemption of the FLSA and NYLL.  Plaintiffs' counsel was zealous in the pursuit of Plaintiffs' litigation objectives and secured a favorable result on the Plaintiffs' behalf in light of this risk.  The settlement funds will be made available to the Plaintiffs without the uncertainty and delay of trial, or the risk that a judgment may be unable to be collected after a successful trial.

As a result, the Firm expended a total of 62.94 billable hours on this matter, as evidenced by counsel's contemporaneous billing records, which are annexed hereto as Exhibit L.  Thus, Plaintiffs' attorneys' fees in this matter, when calculated pursuant to the lodestar, amount to $17,592.75.  Here, Plaintiffs' seek fees amounting to $6,190.10, an amount that is less than their lodestar.

Lastly, Plaintiffs' counsel seeks reimbursement for $1,559.90 in advanced litigation costs, representing $402.00 for the filing fee for the Complaint, $95.40 for service of process of the Summons and Complaint on Defendant, and $1062.50 for the mediator's fee.  Copies of the applicable invoices are annexed as Exhibit M.

Accordingly, Plaintiffs' counsels' requests for attorneys' fees in the amount of $6,190.10 and expenses in the amount of $1,559.90 should be approved as reasonable.

In light of the foregoing, Plaintiffs respectfully request that the Court approve the parties' settlements and dismiss this matter with prejudice, while retaining jurisdiction over matter to enforce the terms of the parties' settlement agreements.

We thank the Court for its consideration of these requests.

Respectfully submitted,

_____
DAVID D. BARNHORN, ESQ.

C:      All Counsel of Record *via* ECF